# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

James Simpson,                )
                              )
                Plaintiff,    )      No. 12 C 6217
                              )
        v.                    )
                              )      Judge Edmond E. Chang
Meijer, Inc., James Glasgow, the Office    )
of the Will County State's Attorney,       )
James Long, Christopher Regis, and         )
Adam Capelli,                 )
                              )
                Defendants.   )

## MEMORANDUM OPINION AND ORDER

Plaintiff James Simpson filed this suit, alleging that his constitutional rights were violated. 42 U.S.C. § 1983. He also brings an Illinois state-law claim for malicious prosecution.[1] Simpson's allegations arise from his retail-theft arrest on April 9, 2008, and the prosecution that followed. R. 1, Compl.[2] Simpson brings claims against James Glasgow, who is the State's Attorney for Will County; the Office of the Will County State's Attorney; and three Will County Assistant State's Attorneys who were involved in Simpson's prosecution. *Id.* ¶¶ 63-102. (For convenience, all of the State's Attorney-related defendants are referred to collectively as the State's Attorney defendants.) The

---

[1] This Court has subject matter jurisdiction of the § 1983 claims under 28 U.S.C § 1331, and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

[2] Citation to the docket is "R." followed by the docket entry. Citations to the parties' motions to dismiss and briefs are as follows: R. 22, Meijer's Motion to Dismiss (Meijer MTD); R. 32, Simpson's Response to Meijer's Motion to Dismiss (Pl. Resp. to Meijer); R. 38, Mejier Reply; R. 24, State's Attorneys' Motion to Dismiss (State's Att'y MTD); R. 34, Simpson's Response to State's Attorneys' Motion to Dismiss (Pl. Resp. to State's Att'y); and R. 36, State's Attorneys' Reply (State's Att'y Reply).

malicious prosecution claim also named Meijer, Inc., as the employer of the security guards who reported Simpson for retail theft and served as witnesses at his criminal trial. *Id.* ¶¶ 93-102; *see also* R. 32, Pl.'s Resp. to Meijer at 4 (clarifying that the § 1983 counts are not directed to Meijer). All defendants now move to dismiss Simpson's complaint: the State's Attorney defendants in one motion, R. 24, and Meijer in another, R. 22.

For the reasons set forth below, both motions are granted.

## I.

At this stage of the litigation, we accept Plaintiff's allegations as true and draw reasonable inferences in Plaintiff's favor. *Ashcroft v. al-Kidd*, —— U.S. ——, 131 S. Ct. 2074, 2079 (2011). On April 9, 2008, at about 3:30 in the morning, Kevin Allen asked James Simpson to drive Allen to a Meijer store[3] in Bolingbrook, Illinois. Compl. ¶ 9. Simpson apparently agreed, and drove Allen to the store about half an hour later. *Id.* ¶ 10. The two men entered the store together, but once inside, quickly went their separate ways. *Id.* ¶¶ 11-12. Unbeknownst to Simpson, Allen attempted to shoplift from the store by opening the packaging of several electronics items and then concealing them under his clothes. *Id.* ¶ 13. At some point, Simpson and Allen met up again in the store, and then started to leave together. *Id.* ¶ 16. At no time did Simpson attempt to steal anything from the store, nor was he aware that Allen was attempting (unsuccessfully, as it turns out) to do so. *Id.* ¶¶ 14-15.

---

[3] Meijer stores offer both groceries and department-store products. *See* meijer.com/content/corporate.jsp?pageName=company (visited July 22, 2013).

As they left the store, Simpson and Allen were immediately stopped by the Bolingbrook police, who had been called by Meijer security guards. *Id.* ¶ 17. One of the security guards, Antoinette Del Rio, told the police that, on the store's security cameras, she saw Allen shoplifting items, but she said nothing about Simpson opening or hiding anything, nor did she see Simpson do those things. *Id.* ¶¶ 18-19. Police searched Allen and found stolen merchandise, as well as the knife Allen used to open the packaging of those items. *Id.* ¶¶ 20-21. Police searched Simpson, but did not find any stolen items. *Id.* ¶ 22. Nevertheless, Simpson alleges, the police report from the scene incorrectly stated that stolen merchandise was "concealed in *their* pockets," and Simpson and Allen were both arrested at the scene. *Id.* ¶¶ 23, 25.

As they were being placed under arrest, and on at least two occasions thereafter, Allen stated (and later swore in an affidavit) that he acted alone and without Simpson's knowledge. *Id.* ¶¶ 26-28. Allen pled guilty to retail theft and was sentenced to 4½ years' imprisonment. *Id.* ¶ 29. Simpson denied any wrongdoing and went to trial on a charge of retail theft, apparently remaining in custody throughout the prosecution. *Id.* ¶¶ 30, 102. At Simpson's trial, two Meijer security guards (Del Rio and Malson) testified that they saw Simpson hand CDs to Allen. *Id.* ¶¶ 32, 34. But Del Rio's report, written the day of the arrest, did not mention this fact. *Id.* ¶ 32. And the other security guard, Jason Malson, did not produce a report reflecting this fact until the day before trial, at the alleged request and encouragement of the Assistant State's Attorneys. *Id.* ¶ 35. Allen's testimony that he acted alone, and that Simpson was not involved, was excluded by the state trial court. *Id.* ¶ 31.

Simpson was found guilty of retail theft by a jury, and sentenced to 10 years' imprisonment. *Id.* ¶¶ 41, 43. Simpson appealed the conviction, and on November 2, 2010, the Illinois Appellate Court reversed the conviction (on grounds not relevant to the motions under consideration) and remanded for a new trial. *Id.* ¶ 47. The State's Attorney's Office continued to prosecute the case against Simpson, but on August 8, 2011, the retrial's start date, the matter finally was dismissed by the prosecution. *Id.* ¶¶ 49, 59, 62. Simpson alleges that between the time the Illinois Appellate Court reversed his conviction, and the time the Assistant State's Attorneys dropped the charges, all defendants in this case (including Meijer) knew that no one had seen Simpson hand CDs to Allen, and knew that Del Rio and Malson had testified falsely at Simpson's first trial, at the encouragement of "Defendants." *Id.* ¶¶ 50-58. All the while, the State's Attorneys continued to prosecute the case against Simpson, encouraging him to plead guilty in exchange for time served. *Id.* ¶ 59. When Simpson was released from custody in August 2011, he had been incarcerated for more than three years. *Id.* ¶ 73.

In August 2012, Simpson filed a three-count complaint, alleging that the State's Attorney Defendants violated his Fourth and Fourteenth Amendment rights,[4] and that all Defendants maliciously prosecuted him. *Id.* at 8-14. Both the State's Attorney defendants and Meijer moved to dismiss all counts against them. R. 22 (Meijer's MTD); R. 24 (State's Att'y MTD).

---

[4] Neither the Complaint nor Simpson's response brief provides any further specificity as to his § 1983 claims, a problem that is explored more fully below.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Significantly, the only allegations that are entitled to the assumption of truth are those that are *factual* allegations, rather than mere legal conclusions or formulaic assertions of elements of the asserted claim. *Iqbal*, 556 U.S. at 678-79.

## III.

Up first is the State's Attorney defendants' arguments on the federal claims, and the opinion later turns to the state-law malicious prosecution claim, which Simpson brought against all of the defendants.

## A.     Section 1983 Claims

The first two counts of Simpson's complaint are brought under 42 U.S.C. § 1983. In Count 1, Simpson alleges that the three Assistant State's Attorneys (Long, Regis, and Capelli) violated Simpson's Fourth and Fourteenth Amendment rights by initiating and continuing to prosecute the case against Simpson without probable cause, while encouraging witnesses to testify falsely against him. Compl. ¶¶ 63-79. In Count 2, Simpson alleges that the State's Attorney (Glasgow) is responsible for the unconstitutional conduct of the Assistant State's Attorneys. *Id.* ¶¶ 80-91. The State's Attorney defendants move to dismiss all § 1983 claims against the Office of the State's Attorney and Glasgow because the Eleventh Amendment bars suits against them in federal court, and against the Assistant State's Attorneys because they are immune from liability for their actions as prosecutors. *See* State's Att'y MTD at 4-8. Failing those two arguments, the State's Attorney defendants argue that both Counts 1 and 2 fail to state a claim. *Id.* at 8-11.

### 1.     James Glasgow and the Office of the State's Attorney

First, the State's Attorney defendants argue that the claims against Glasgow and the Will County State's Attorney's Office must be dismissed because the claims are barred by the Eleventh Amendment. State's Att'y MTD at 4-5. The Court agrees that

the § 1983 claims against Glasgow and the State's Attorney's Office must be dismissed, but not primarily for the reason the State's Attorney defendants argue.

Section 1983 provides relief against "persons" who commit constitutional violations under color of state law. 42 U.S.C. § 1983. The law is well-settled that suits against government officials in their official capacity are really suits against the governmental entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). And "neither a State nor its officials acting in their official capacities are 'persons' [subject to an action for damages] under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, to the extent Simpson's claims are brought against the State's Attorney's Office, which is a unit of state government (see below for discussion on that point), and against Glasgow in his official capacity, § 1983 does not permit such claims because those defendants are not "persons" under the statute.

Those defendants are also likely entitled to immunity under the Eleventh Amendment. "The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacity." *Garcia v. City of Chicago*, 24 F.3d 966, 968 (7th Cir.1994) (citation omitted). Although Congress can abrogate state sovereign immunity in certain circumstances, § 1983 does not abrogate the Eleventh Amendment immunity of a state and its agencies from suit in federal court. *See Meadows v. Ind.*, 854 F.2d 1068, 1070 n. 3 (7th Cir.1988). A federal court must look to state law to determine whether a local government entity, such as a county, must be

treated as an entity of the State for Eleventh Amendment purposes. *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). The Illinois Supreme Court has held that a State's Attorney in his or her official capacity, and his or her office, is an arm of the state. *Igemunson v. Hedges*, 549 N.E.2d 1269, 1272 (1990); *Garcia,* 24 F.3d at 969. Thus, the protections of the Eleventh Amendment would extend to the State's Attorney's office and Glasgow in his official capacity.

In response to the State's Attorney defendants' arguments, Simpson apparently concedes that he cannot sue the State's Attorney's Office or Glasgow in his official capacity. Instead, Simpson asserts that he has sued Glasgow in his *individual* capacity, which, Simpson argues, are not barred by the Eleventh Amendment. Pl. Resp. to State's Att'y at 5. It is true that the Eleventh Amendment does not bar suit against state officials in their individual capacities, *Rodriguez v. Cook County, Ill.*, 664 F.3d 627, 632 (7th Cir. 2011) (citation omitted), but Simpson has not actually alleged that Glasgow was personally involved in any of the misconduct detailed in the complaint. Count 1, in which Simpson brings allegations against certain defendants "individually," specifically names only the Assistant State's Attorney defendants. Compl. ¶¶ 63-79. Nor does the complaint allege that Glasgow was personally involved in Simpson's retail-theft prosecution and the decision to present the testimony of particular witnesses. *Id.* Count 2 at least specifically refers to the "State's Attorney," *Id.* ¶ 85, but the count appears to be against the defendants in their *official* capacities, *see id.* ¶ 82. Moreover, the allegations against the "State's Attorney" in Count 2 do not describe any personal involvement by Glasgow, but rather generally allege that the

State's Attorney was responsible for a "policy or procedure" that led to Simpson's injury, and for a failure to adequately train and supervise the Assistant State's Attorneys. *Id.* ¶¶ 80-91. And it is worth noting here that § 1983 does not provide for vicarious or supervisory liability, *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978) (cited by *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"), so for an individual-capacity claim against Glasgow to survive, Simpson must allege Glasgow's personal involvement—through factual allegations, not mere conclusory labels—in the constitutional violation. The complaint does not do so. The § 1983 claims against Glasgow, both in his official and individual capacities, as well as against the Office of the Will County State's Attorney, are dismissed.

### 2.    The Assistant State's Attorney Defendants

The State's Attorney defendants also argue that claims against Assistant State's Attorneys Long, Regis, and Capelli (the ASAs) must be dismissed because they are protected by absolute prosecutorial immunity. State's Att'y MTD at 5-8. It is well-settled that "[p]rosecutors are absolutely immune from suits for monetary damages under § 1983 for conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). In other words, "[a] prosecutor is shielded by absolute immunity when he acts as 'an advocate for the State' but not when his acts are investigative and unrelated to the preparation and initiation of judicial

proceedings." *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Whether the ASAs are absolutely immune from suit, therefore, depends on whether their conduct, as alleged in the complaint, can be characterized as "investigatory," or whether it is more properly viewed as "prosecutorial." If the latter, then prosecutorial immunity forbids monetary relief. To make that determination, the Court cannot rely on the labels that Simpson or the State's Attorney defendants ascribe to the alleged conduct in the complaint, but must "look to the nature of the function that the official was performing in the particular case." *Henderson v. Lopez*, 790 F.2d 44, 46 (7th Cir. 1986). The State's Attorney defendants argue that Simpson's allegations against the ASAs are "precisely the job functions that are protected by Prosecutorial Immunity." State's Att'y MTD at 6. In response, Simpson argues that their conduct is not protected by prosecutorial immunity, at least to the extent that the ASAs encouraged the Meijer security guards to falsify reports and testimony, and continued to prosecute the case after Simpson's successful appeal after the guilty verdict, knowing that witnesses had lied and that a retrial would not occur. Pl. Resp. to State's Att'y at 6.

First, the State's Attorney defendants are correct in saying, and Simpson does not contest, that the ASAs are immune from liability for their decision to initiate the prosecution against him. That decision is at the very core of prosecutorial immunity, since that function "most often invites a common-law tort action." *Imbler*, 424 U.S. at 421; *see also id.* at 431 ("[I]n initiating a prosecution . . . the prosecutor is immune from a civil suit for damages under § 1983."). Absolute immunity shields prosecutors even if they "initiate[ ] charges maliciously, unreasonably, without probable cause, or even

on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986). This may seem unjust where a "genuinely wronged defendant [is left] without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," but the alternative "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler*, 424 U.S. at 427-28. To the extent Simpson's claims against the ASAs are based on their decision to initiate the prosecution against him, they are barred by prosecutorial immunity.

Simpson attempts to overcome the ASAs' protection from suit by arguing that his allegations extend beyond the decision to prosecute, and include the ASAs' conduct in encouraging the Meijer security guards to testify falsely, and helping to fabricate evidence against Simpson. Pl. Resp. to State's Att'y at 6. But even as to these allegations, Simpson's claims fail because prosecutorial immunity protects even a prosecutor's knowing use of false testimony at trial. *Imbler*, 424 U.S. at 431 & n. 34; *Houston v. Partee*, 978 F.2d 362, 365 (7th Cir. 1992). Again, the point of course is not to protect prosecutors who use perjured testimony, but instead to ensure that prosecutors make witness-testimony decisions based on the merits of the case, without fear of being personally sued. And because witness preparation is closely related to presentation of trial testimony, prosecutorial immunity also includes the "*preparation* [of evidence] for its presentation at trial," *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993) (emphasis added), so testimony preparation is also not a basis on which Simpson can avoid prosecutorial immunity.

11

It is true that a prosecutor who plants evidence before someone is arrested, or who coerces a witness to lie during the *investigatory* phase of a case can invoke only qualified immunity.[5] *Id.* at 276; *Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012); *Fields v. Wharrie*, 672 F.3d 505, 512 (7th Cir. 2012). That is because a prosecutor participating in the investigation stands in the same shoes as investigating officers, and those officers can invoke only qualified immunity. *Buckley*, 509 U.S. at 273. But if fabrication occurs during a judicial proceeding, the prosecutor will receive absolute immunity. *Fields*, 672 F.3d at 512 (citing *Burns v. Reed*, 500 U.S. 478, 489-92 (1991)). Even assuming, by Simpson's own account, that the ASAs encouraged witnesses to lie and helped one Meijer security guard create a false report about the incident, that misconduct occurred at or leading up to Simpson's criminal trial. *See* Compl. ¶¶ 52, 57. That type of preparation of witnesses falls squarely within the ambit of a prosecutor's absolute immunity. *Fields,* 672 F.3d at 510 ("Absolute [prosecutorial] immunity . . . encompasses any action directly relevant to a prosecutor's ability to conduct a trial."(citation omitted)). And the allegedly fabricated report, which was prepared a day before trial, is appropriately characterized as an "effort to control the presentation of [a] witness' testimony," which is "a task fairly within [a prosecutor's] function as an advocate." *Imbler*, 424 U.S. at 431 n.32. In short, prosecutorial immunity applies to Simpson's allegations that the ASAs elicited false testimony at Simpson's trial and

_____

[5]There is nothing in the record that tells us why the police officers and the security guards have not been sued.

helped a witness fabricate evidence, and those claims against the ASAs must be dismissed.

Beyond the decision to prosecute and to present witnesses, the other conduct alleged in Simpson's complaint does not fit under the banner of "investigative" activities (which would take it outside the realm of absolute immunity). Simpson's complaint alleges that the prosecutors "investigated the matter," Compl. ¶¶ 56, 68, but that bare allegation, without more, is a label and presents no facts that the ASAs performed functions that were investigative in nature. Indeed, according to the complaint, when the prosecutors became involved with Simpson's case, he was already under arrest for retail theft. Compl. ¶ 25. It is not alleged that the prosecutors were present at the time of the arrest nor does Simpson allege that the ASAs provided police officers with legal advice on whether there was probable cause to make the arrest. *See Burns*, 500 U.S. at 493 (providing advice to police officers during the early investigative phase of a criminal case is not covered by absolute immunity). Simpson does not allege the ASAs had a role at all until *after* the Bolingbrook police arrested him and provided a police report stating that Simpson and Allen had merchandise concealed "in *their* pockets." Compl. ¶ 23 (emphasis in original). As explained above, a prosecutor's actions in bringing a case based on police reports and witness statements are protected by absolute immunity. *See Buckley*, 509 U.S. at 273. The misconduct alleged against the ASAs "clearly involve[d] the prosecutor's role as advocate for the State, rather than his role as administrator or investigative officer." *Burns*, 500 U.S. at 491 (quotation omitted). Therefore, the ASAs' conduct, however repugnant (assuming the truth of the

allegations), is protected by absolute prosecutorial immunity, and the claims against them must be dismissed.

To save at least a narrow subset of his claims, Simpson argues that the ASAs' decision to continue prosecuting the case against him, even after Simpson's successful appeal and knowing that the state's witnesses lied, falls outside the protection of prosecutorial immunity. Pl. Resp. to State's Att'y at 6. But Simpson cites no case law for this contention. He just argues that "[c]ausing Simpson to remain incarcerated despite knowing that a subsequent trial would not take place is [ ] not a prosecutorial function that is protected." *Id.* Like the decision to initiate a prosecution in the first place, however, the ASAs' decision about whether and when to drop charges are among the specific prosecutorial decisions that *Imbler* held warranted absolute immunity, because they are closely associated with a prosecutor's judicial functions. *Imbler*, 424 U.S. at 431; *Buckley*, 509 U.S. 269.

### 3. Failure to State a Claim

The State's Attorney defendants' final argument with regard to the § 1983 claims is that Simpson's allegations fail to state a cause of action: Count 1 because the complaint does not try to allege a constitutional claim for malicious prosecution,[6] and Count 2 because, as a *Monell* claim, it lacks an underlying constitutional violation. State's Att'y MTD at 8-11. There is no need to address this argument, because the §

---

[6] Simpson cannot state a claim for malicious prosecution under § 1983, because Illinois law provides a remedy for malicious prosecution. *See Parish v. City of Chicago*, 594 F.3d 551, 552 (7th Cir. 2009) (citing *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001)). Indeed, as discussed below, Simpson tries to allege a *state-law* malicious prosecution claim against the State's Attorney defendants as well as Meijer, rather than a federal constitutional claim.

1983 claims are dismissed by the rulings based on the first two arguments made by the State's Attorney defendants. All of the § 1983 claims against the State's Attorney and his office are dismissed based on *Will v. Michigan Department of State Police* and the Eleventh Amendment, and all of the § 1983 claims against the Assistant State's Attorneys (Long, Regis, and Capelli) are dismissed based on absolute prosecutorial immunity. Because Simpson has not sought to bring § 1983 claims against any other defendants, no federal claims remain.

One final issue to address on the § 1983 claims: In response to the State's Attorney defendants' motion to dismiss, Simpson requested leave to amend his complaint to cure any deficiencies. Pl.'s Resp. to State's Att'y at 9. There is reason to doubt that Simpson can allege facts, in good faith, that would cure the problems with the allegations against Glasgow and the State's Attorneys' office, or remove the application of absolute immunity with respect to the ASAs. Nevertheless, Simpson has leave to file a motion to amend his complaint if he believes, in good faith, that the deficiencies as to his allegations against the ASAs or Glasgow can be cured. The proposed amended complaint should be attached to the motion, and any § 1983 claims must identify the specific constitutional right that he seeks to vindicate. *See Newsome*, 256 F.3d at 751; *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) ("[Section] 1983 is not itself a source of substantive rights . . . . [A Court must be able to] identif[y] the specific constitutional right allegedly infringed. . . .") (quotations and citations omitted).

**B.     Malicious Prosecution**

In addition to his § 1983 claims, Simpson also brings a state-law malicious prosecution claim against all of the defendants (the State's Attorney defendants and Meijer). Compl. ¶¶ 92-102. Simpson alleges that Defendants "played an active role" in bringing and continuing to pursue the prosecution against him, and did so "with malice and improper motive." *Id.* ¶¶ 97-98. "[T]o state a claim for malicious prosecution [under Illinois state law], a plaintiff must allege facts showing: (1) the defendants commenced or continued an original criminal [ ] proceeding; (2) the proceeding terminated in favor of plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). The absence of any of these elements "bars a plaintiff from pursuing [his] claim." *Swick v. Liataud*, 662 N.E.2d 1238, 1242 (Ill. 1996).

### 1. The State's Attorney Defendants

The State's Attorney defendants move to dismiss this claim on the same theory as the § 1983 claims against them—that as prosecutors they are absolutely immune from liability for state-law claims for malicious prosecution.[7] State's Att'y MTD at 11. Because the malicious prosecution claim is brought under state law, Illinois law governs whether prosecutorial immunity applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). That analysis is not complicated however, because under Illinois law, the

---

[7] The State's Attorney defendants also make a one-sentence argument that Simpson has failed to allege the third element of his claim—that defendants lacked probable to pursue the criminal case against him. State's Att'y MTD at 11. Though not fully developed, the argument is well taken, since Simpson specifically alleges that the police report stated that stolen merchandise was found concealed in both Allen's and Simpson's pockets. Compl. ¶ 23. However, the Court need not address this argument because the malicious prosecution claim against the State's Attorney defendants is barred on other grounds.

same immunity that shields prosecutors from federal claims also applies to state law claims. *See Frank v. Garnati*, 989 N.E.2d 319, 322 (Ill. App. Ct. 2013) (citing federal cases for the proposition that "the state and federal doctrines of prosecutorial immunity are coterminous and prosecutors acting within the scope of their prosecutorial duties are absolutely immune from liability under state law"); *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 769 (N.D. Ill. 2012) ("Under Illinois law, the state and federal doctrines of prosecutorial immunity are coterminous." (quotations and citations omitted)). Specifically, Illinois courts adopt and apply the United States Supreme Court's line of cases on prosecutorial immunity and its contours. *See White v. City of Chicago*, 861 N.E.2d 1083, 1088-89 (Ill. App. Ct. 2006); *see also Frank,* 989 N.E.2d at 323; *Weimann v. Kane Cnty.*, 502 N.E.2d 373, 377 (Ill. App. Ct. 1986). Therefore, under Illinois common law, just as under the federal doctrine, prosecutors acting within the scope of their prosecutorial duties are absolutely immune from liability under state law. *Frank*, 989 N.E.2d at 322; *Weimann*, 502 N.E.2d at 377. For the same reasons that the ASAs are immune from liability on the § 1983 claims, the ASAs are also immune from liability for Simpson's state-law malicious prosecution claim.[8]

---

[8]Although not cited by Simpson, some courts have recently raised the possibility that there is a "malice exception" to prosecutorial immunity under Illinois law. *See Hobbs,* 899 F. Supp.2d at 769; *Aboufariss v. City of DeKalb*, 713 N.E.2d 804, 812 (Ill. App. Ct. 1999). Simpson has not argued the point, so it is forfeited. In any event, for the reasons explained in *Frank*, the better view is that there is no such exception to the immunity under Illinois law. 989 N.E.2d at 321-23 (explaining that *Aboufariss* did not actually address whether there is a malice exception to a prosecutor's absolute immunity, and noting that such an exception would be "out of step with all prior and subsequent Illinois and federal cases on this question"). Rather, prosecutorial immunity in Illinois is absolute, not qualified, just as it is under federal law.

Because the malicious prosecution claim against the individual ASAs (Long, Regis, and Capelli) is dismissed on the basis of prosecutorial immunity, the claim against Glasgow, as the State's Attorney, must also be dismissed. As discussed above, Simpson has not alleged that Glasgow was personally involved in his prosecution (if he was, he would be protected by prosecutorial immunity). Therefore, Simpson's theory of liability against Glasgow for the malicious prosecution claim must be in his role as supervisor of the ASAs. But under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, Glasgow cannot be liable "for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Thus, as goes the malicious prosecution claim against the ASAs, so goes that claim against Glasgow and the State's Attorney's Office.

For the reasons explained above, the malicious prosecution claim against all the State's Attorney defendants is dismissed.

## 2. Meijer, Inc.

With respect to the malicious prosecution claim against Meijer, Meijer argues that (1) to the extent claims are brought against Meijer for the allegedly false testimony of its security guards, absolute immunity applies; (2) Simpson has not adequately alleged that Meijer commenced or continued the criminal proceeding against him; and (3) Meijer cannot be held vicariously liable for the alleged actions of its security guards in this case. Meijer Reply at 1-2.[9] As explained below, the malicious

---

[9] Meijer's opening brief addressed all of Simpson's claims, because it was not clear from the allegations of the complaint whether the § 1983 claims were brought against Meijer. *See* Meijer MTD. But in his response to Meijer's motion, Simpson stated that "Counts I and II are

prosecution claim against Meijer is dismissed based on Meijer's first and second arguments.

"It is well-established [in Illinois] that witnesses enjoy absolute privilege from civil suit for statements made during judicial proceedings." *See McNall v. Frus*, 784 N.E.2d 238, 239 (Ill. App. Ct. 2002) (citations omitted); *see also Jurgensen v. Haslinger*, 692 N.E.2d 347, 349 (Ill. App. Ct. 1998) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983)). The absolute immunity for witnesses in judicial proceedings even encompasses witnesses who knowingly give false testimony, so long as the testimony is "pertinent and material to the matter in controversy." *See Jurgensen*, 692 N.E.2d at 349 (quoting *Spaids v. Barrett*, 57 Ill. 289 (Ill. 1870)). As *McNall* explains, without absolute immunity, witnesses would be reluctant to testify and fearful of personal liability from later litigation. *See* 784 N.E.2d at 239. Simpson's claim against Meijer, to the extent it is based on Del Rio's and Malson's allegedly false testimony during Simpson's criminal trial, Compl. ¶¶ 32, 34, 53, 58, is barred by the absolute immunity for witnesses. To the extent Simpson's claim against Meijer is based on Malson's participation in the creation of an allegedly false report the day before trial, Compl. ¶¶ 35, 58, the claim is also barred. If the immunity for a witness' testimony is to have any impact, it must also apply to the witness' actions in preparing for trial. *See Buckley v. Fitzsimmons*, 952 F.2d 965, 966-67 (7th Cir. 1992) ("Immunities cover not only the core functions sought to be protected but also normal preparatory steps." (citation omitted)), *rev'd on other grounds*, 509 U.S. 259 (1993).

---

not addressed to [Meijer]." Pl. Resp. to Meijer at 4.

In responding to Meijer's motion, Simpson apparently concedes that he cannot sustain a claim against Meijer based on Del Rio's and Malson's trial testimony. Pl. Resp. to Meijer at 4-5. But Simpson argues that the basis for his malicious prosecution claim against Meijer is that it "played an active role in prosecuting this matter against Simpson, knowing that [ ] Del Rio and [ ] Malson did not see Simpson take any merchandise or conceal anything on his person."*Id.* at 5. But Simpson has failed to allege what action Meijer or its security guards took to commence or continue the criminal proceeding against Simpson, beyond calling the police on the night in question and testifying at Simpson's trial. *See* Compl. ¶¶ 17-18, 32, 34. In fact, Simpson specifically alleges that, at least on the night of the arrest, Del Rio "never informed [Bolingbrook police] that she observed Simpson open or conceal any items." *Id.* ¶ 19. Therefore, Simpson has failed to adequately allege facts (as opposed to just a conclusory label) on the first element of a malicious prosecution claim against Meijer—that it "commenced or continued an original criminal [ ] proceeding" against Simpson. *Hurlbert*, 938 N.E.2d at 512.

Nor does Simpson allege that anyone from Meijer actively participated in Simpson's criminal proceedings, except for the conclusory allegations that "Defendants played an active role in bringing the action" against Simpson, and "brought, continued and encouraged prosecuting the criminal action" against him. Compl. ¶¶ 97-98. Such conclusory allegations do not "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In other words, Simpson does not allege sufficient facts from which the Court could plausibly infer that Meijer

(or its security guards) took an active role in the prosecution's initiation or continuation. Simpson's malicious prosecution claim against Meijer fails.

The Court briefly addresses Meijer's third argument, for the sake of completeness. Meijer argues that it should not be vicariously liable for the alleged acts or omissions of either Del Rio or Malson. Meijer Reply at 6. For Meijer to be vicariously liable for the acts of its employees (remember, Meijer does not contest, for purposes of this motion, that Del Rio and Malson actually were its employees), Simpson would ultimately have to show that Del Rio's and Malson's conduct (1) was "of the kind [they] were employed to perform," (2) "occur[red] substantially within the authorized time and space limits," and (3) was "actuated, at least in part, by a purpose to serve the master." *Rodman v. CSX Intermodal, Inc.*, 938 N.E.2d 1136, 1139-40 (Ill. App. Ct. 2010). Meijer contends that Del Rio's and Malson's participation in the criminal trial was not part of their duties as security guards for Meijer and was not done for the benefit of Meijer. Meijer Reply at 6. Were this case to proceed to discovery, it is possible that Meijer could move for summary judgment on such a theory, but at the motion to dismiss stage, this Court is not in a position to determine whether Del Rio's and Malson's conduct was within the scope of their employment, particularly because vicarious liability may lie "even if the conduct was unauthorized or forbidden by the employer." *Maras v. Milestone*, 809 N.E.2d 825, 828 (Ill. App. Ct. 2004) (citation omitted) (reversing a trial court's dismissal of vicarious liability claims).

Nevertheless, as explained above, the malicious prosecution claim against both the State's Attorney defendants and Meijer is dismissed. Because Simpson has

specifically requested it, and as with his § 1983 claims, Simpson may seek leave to amend his complaint, if he believes in good faith that he can allege sufficient facts to cure the deficiencies detailed above.

**IV.**

For the reasons stated above, both the State's Attorney defendants' motion to dismiss [R. 24] and Meijer's motion to dismiss [R.22] are granted, and the complaint is dismissed without prejudice, for now. Plaintiff has until August 14, 2013 to file a motion for leave to amend the complaint. If he does file the motion, he should notice it for presentment on August 21, 2013, at 9:30 a.m. A status hearing is set for that date and time. If he does not file the motion by August 14, the case will be dismissed with prejudice, and the status hearing will be vacated.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: July 24, 2013